Wilson Sullivan Company, Inc., Appellant, *v.* International Paper Makers Realty Corporation, Respondent.

Argued March 12, 1954; decided April 23, 1954.

*Bernard Ellenbogen* and *Meyer A. Jeneroff* for appellant. I. As a matter of law, the Appellate Division erred in considering this an action for commissions rather than one for damages for breach of contract due to wrongful discharge. II. Nowhere in this contract is there any provision, express or implied, terminating this contract upon a sale of the building. Absent such provision, plaintiff has a good cause of action for wrongful discharge. (*Parsil* v. *Emery*, 242 App. Div. 653; *Hudak* v. *Hornell Industries*, 304 N. Y. 207; *Vail* v. *Jersey Little Falls Mfg. Co.*, 32 Barb. 564; *Fisher* v. *City of Mechanicville*, 225 N. Y. 210; *Greenberg* v. *Remick & Co.*, 230 N. Y. 70; *Mandel* v. *Liebman*, 303 N. Y. 88; *Tel-Hotel Corp.* v. *Lexnott Corp.*, 205 Misc. 576; *Wells* v. *Alexandre*, 130 N. Y. 642.) III. There can be no ambiguity in a contract on a subject that is not even mentioned therein. IV. If there be no ambiguity in the contract, there is no need for its interpretation. Its legal effect is then a pure question of law for the court. V. The courts below have improperly rewritten this contract of employment. (*Rosenthal* v. *American Bonding Co.*, 207 N. Y. 162; *Matter of Loew's Buffalo Theatres*, 233 N. Y. 495.) VI. The courts below erred in failing to apply the fundamental rule that contracts terminate on their expiration date, absent any provision to the contrary. They should not have dismissed the complaint herein for insufficiency. VII. Plaintiff's motion for a summary judgment should be granted. In the absence of ambiguity, no extrinsic evidence, including that of practical construction, is available to vary the terms of this employment agreement. The same should be enforced as written. (*Brainard* v. *New York Central R. R. Co.*, 242 N. Y. 125; *Hopwood Plays, Inc.*, v. *Kemper*, 263 N. Y. 380; *General Phoenix Corp.* v. *Cabot*, 300 N. Y. 87; *Heller & Henretig* v. *3620-168th St. Corp.*, 302 N. Y. 326; *Barrand* v. *Quinn*, 277 App. Div. 938, 302 N. Y. 744.) VIII. Computation of plaintiff's

damage is a matter of simple mathematics. No issue of fact is presented and no assessment of damage is required. (*Ware Bros. Co.* v. *Cortland Cart & Carriage Co.,* 192 N. Y. 439.)

*Charles J. Tobin, Jr.,* and *William J. Roberts* for respondent. I. By its terms the contract clearly provided that it was to be effective only as long as defendant owned the building. II. The intent of the parties and the meaning of the contract should be determined from a consideration of the contract in its entirety. (*Fleischman* v. *Furgueson,* 223 N. Y. 235; *Paige* v. *Faure,* 229 N. Y. 114.) III. If it be assumed that a good faith sale of the building does not terminate defendant's liabilities under the contract, the terms of the contract do not permit the fixing of liability upon the basis argued by plaintiff. (*Bers* v. *Erie R. R. Co.,* 225 N. Y. 543; *Lehman* v. *Reiner,* 126 Misc. 465; *Baker* v. *Schleyer,* 233 App. Div. 584, 260 N. Y. 673; *Red Hook Cold Storage Co.* v. *Department of Labor,* 295 N. Y. 1.) IV. Any ambiguity in the contract must be construed against plaintiff who drew the instrument. (*Gillet* v. *Bank of America,* 160 N. Y. 549.) V. Failure on the part of plaintiff to allege bad faith on the part of defendant in defendant's sale of the building renders the complaint fatally defective. (*Du Boff* v. *Matam Corp.,* 272 App. Div. 502; *Matter of United Cigar Stores Co.,* 72 F. 2d 673; *Gray & Co.* v. *Western Borax Co.,* 99 F. 2d 239; *Petroleum Frgt. Lines Corp.* v. *Better Gas & Oil Co.,* 157 Misc. 1; *Wells* v. *Alexandre,* 130 N. Y. 642; *Atwater & Co.* v. *Terminal Coal Corp.,* 32 F. Supp. 178, 115 F. 2d 887; *Knight* v. *Emmons Bros. Co.,* 181 App. Div. 751; *Natural Home Products Co.* v. *Union Carbide & Carbon Corp.,* 281 App. Div. 604, 306 N. Y. 638.) VI. Should it be determined that the complaint herein is sufficient in law, there remain triable issues of fact. (*Gale* v. *Frost-Anderson Sales Co.,* 216 App. Div. 780.)

FROESSEL, J. On November 1, 1946, plaintiff and defendant entered into a written agreement whereby defendant " employ[ed] and appoint[ed] " plaintiff " as exclusive renting and managing agent of the building " owned by defendant. Plaintiff was to receive, among other compensation for its services, 5% of the total amount of rental collections from the building. The duration and provisions for termination of this

agreement were provided for in its seventh paragraph, which reads, in part: " The agreement * * * shall continue in full force and effect until last day of February 1948, and, if not then terminated by either party giving to the other thirty (30) days prior notice in writing, shall continue from year to year until terminated by either party at the end of any extended yearly term, by the giving of a like notice ".

Up to June 1, 1949, neither party had exercised its power of termination. But during June of that year defendant notified plaintiff it intended to sell the building in question, and that it expected to terminate their contract with respect to the management thereof when transfer of title to the new owners was completed. On or about June 30, 1949, eight months before the contract's provisions permitted termination, defendant did sell the building.

Plaintiff contends that since the agreement had not been terminated in February, 1949, it had a contractual right until February, 1950, to continue its duties as defendant's exclusive renting and management agent, and to receive the stipulated compensation therefor. By selling the building, plaintiff urges, defendant breached its duty under the contract to employ plaintiff as agent, at least until February, 1950, for which breach defendant must respond in damages. Defendant, on the other hand, maintains that since all of plaintiff's services were to be performed in connection with this particular building, defendant's duty to employ plaintiff therein was subject to the implied condition that defendant continue to own the building.

At the outset we should sharply distinguish between the parties' powers, rights and duties arising under the contract itself, and those arising under the agency relationship created by the contract. It is well settled that, with but a few exceptions not pertinent to the facts of this case, a principal has the *power* to revoke at any time his agent's authority to represent him. This is not to say, however, that in doing so he is immune from liability to the agent for breach of contract (see *Prescott* v. *Buffalo Fire Appliance Corp.*, 237 App. Div. 198, affd. 262 N. Y. 475; *Janvier, Inc.*, v. *Baker,* 229 App. Div. 679). Thus, while defendant had the *power* to terminate at will its agency relationship with plaintiff, if in so doing it violated its obligations under

the contract, it must respond to plaintiff in damages (1 Mechem on Agency [2d ed.], § 568; 2 Am. Jur., Agency, § 37; Note, 38 L. R. A. [N. S.] 366; Restatement, Agency, §§ 118, 450; Williston on Contracts, § 279, cf. § 280). As was said in the old English case of *Toppin* v. *Healey* (11 Weekly Repr. 466, 467 [1863]; 1 New Rep. 326, 327): '' You may revoke an authority although you cannot revoke a contract.''

Obviously, then, the central issue of the case is whether under the terms of this management agreement defendant had the right to terminate the agreement by selling the building which the plaintiff was to manage. The agreement itself fully sets forth in clear and unambiguous language the respective parties' rights and duties. But it does not in any of its clauses give defendant the right to terminate by disposing of the building. By the clear and explicit language of the seventh paragraph, quoted above, it appears that the contract can come to an end by act of the parties *only* on the last day of February of any renewal year, after thirty days' prior written notice of termination. In that provision there is no ambiguity, nor is there any language which we could reasonably construe to grant defendant an additional right to terminate by selling the building.

Defendant agrees that '' no ambiguity exists in the present contract '', yet urges that when read as a whole, the agreement implies that it was designed and drawn with the sole idea that defendant would have a right to terminate it by selling the building. A simple answer is that since no such term expressly appears, it cannot be supplied by the courts under the guise of construction or interpretation, their power being limited to giving effect only to the parties' *expressed* intent (*Friedman* v. *Handelman,* 300 N. Y. 188, 194; *Matter of Loew's Buffalo Theatres,* 233 N. Y. 495, 501; *Rosenthal* v. *American Bonding Co.,* 207 N. Y. 162, 168–169; *Dwight* v. *Germania Life Ins. Co.,* 103 N. Y. 341, 347–348; *Zimmermann* v. *Loft,* 125 App. Div. 725, 729; *Donavin* v. *Thurston,* 190 App. Div. 48, 50; Williston on Contracts, § 610). We '' concern ourselves with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote '' (*Raleigh Associates* v. *Henry,* 302 N. Y. 467, 473). Here they wrote that the agreement '' shall continue in full force and effect '' until terminated as specifically provided therein.

Moreover, we have previously held that when A enters into a contract whereby B is to provide A for a stated period of time with goods or services, which both parties realize are for use in a particular enterprise owned by A, in the absence of a specific clause so providing, A cannot escape his obligations under that contract by voluntarily selling his interest in the enterprise before the expiration of the expressed contract term (*Hudak* v. *Hornell Industries*, 304 N. Y. 207; *Wells* v. *Alexandre*, 130 N. Y. 642; see *Parsil* v. *Emery*, 242 App. Div. 653; *Tel-Hotel Corp.* v. *Lexnott Corp.*, 205 Misc. 576; see, also, *Carouso* v. *Empire Case Goods Co.*, 271 App. Div. 149, affd. 297 N. Y. 514).

In the *Hudak* case (*supra*), defendant employer contracted to hire plaintiffs to work in defendant's business for a full year at a stipulated weekly wage. We there held that despite its voluntary sale of the business before the contract term had expired, defendant was still bound by its contractual obligations to the plaintiffs. Likewise, in the case at bar, where defendant contracted to give plaintiff an exclusive management and renting agency until at least February, 1950, its voluntary sale of the building in June, 1949, could not release defendant from the express terms of its agreement with plaintiff.

Defendant attempts to distinguish the *Hudak* case (*supra*) on the ground that there, an employer-employee relationship existed, whereas here, plaintiff does not hold the status of an " employee ". It should be noted in passing that the agreement here specifically states that defendant " employs " plaintiff and that plaintiff " accepts employment ". More important, however, such an attempted distinction is immaterial in this case, because, as already pointed out, the decision here must turn upon the *terms of the parties' contract*, not upon the abstract nature of the relationship created by that contract, whether denominated as employment or agency. Cases cited by defendant which involve the peculiar " requirements " or " output " type of contract are not apposite here.

Defendant finally contends that there is no ground for imposing liability against it because plaintiff rendered no services after July 1, 1949, and made no collections from which plaintiff's 5% commission could be taken. However, plaintiff's action is *not to collect earned commissions;* rather, it is for *damages*

resulting from defendant's breach of contract, which damages are measured by the commissions plaintiff would have earned but for the breach, less the expenses plaintiff would have incurred in performing its part of the contract (Restatement, Agency, § 445 and comment *a* thereunder). Defendant, after having voluntarily sold the building, thereby preventing plaintiff's collection of the rentals, cannot now assert the fact of no collections as a basis for defeating plaintiff's claim for damages.

We are therefore of the opinion that the trial court erred in dismissing plaintiff's complaint for legal insufficiency. We are further of the opinion that on the record before us defendant has failed to raise any triable issue of fact except as to the amount of damages; indeed, the parties agreed at Special Term that the problem is purely one of law. Consequently, plaintiff's motion for summary judgment should have been granted.

The judgment and order of the Appellate Division should be reversed, with costs in all courts, and the case remitted to the County Court with directions to deny defendant's motion to dismiss the complaint for legal insufficiency, to grant plaintiff's motion for summary judgment and to assess damages.

DYE, J. (dissenting). When this contract is read in the light of its avowed purpose, it seems entirely clear that the parties do not stand in the relationship of employer and employee. The contract, by its terms, is not one of employment, but is in form and tenure, the usual real estate management agreement. Throughout the parties are designated as " Owner " and " Agent "; and the compensation to be paid for services is in the nature of commissions to be computed on a percentage basis according to certain named conditions. The use of the words " employs " and " employment " occurs in but one place and then in conjunction with the words " appoints " and " appointment ". Thereafter and throughout the whole contract, the language used refers to " Owner " as authorizing " the Agent * * * to perform * * * the Agent's agreements * * * as agent of the Owner " and that the " Owner shall indemnify and save the Agent completely harmless " and grants to " Agent " the privilege of displaying " Agent's sign "

on the premises announcing that it is under " its management " all terms and phraseology characteristic of a real estate management contract and not normally incident to the relationship of master and servant or employer and employee.

When so read — for we may not lift the words " employs " and " employment " out of context — the contract is one of management and not of " employment ", which was terminated when the subject matter was extinguished by a bona fide sale of the premises, after notice. When so viewed, there is no actionable breach. The *Hudak* case (*Hudak* v. *Hornell Industries,* 304 N. Y. 207) is not authority to the contrary — that had to do with the breach of an employment agreement negotiated between the employer and a trade union and, according to its specific terms, provided for the employment of the plaintiff, a journeyman printer, for a definite period at a guaranteed weekly wage.

Here the alleged employee is a corporation organized for the purpose of engaging generally in the business of real estate, a field in which it acts as agent for those who seek its services and whose compensation depends on the commissions, as here, based on services rendered in connection with the managed property rather than wages or salary. When the property was sold the mutual obligations terminated.

The judgment appealed from should be affirmed, with costs.

LEWIS, Ch. J., CONWAY and FULD, JJ., concur with FROESSEL, J.; DYE, J., dissents and votes for affirmance in an opinion in which DESMOND and VAN VOORHIS, JJ., concur.

Judgment reversed, etc.