Arthur D. Brennan, J.
In this action for specific performance and for damages, the dispute is brought about by reason of certain provisions contained in a purchase-money mortgage, dated September 29, 1955, made between the plaintiff’s predecessor in title, as mortgagor, and the defendant herein, as mortgagee.
It appears that in 1955 the defendant herein conveyed to the plaintiff’s aforesaid predecessor in title certain premises (located in the City of White Plains) consisting of (1) 27 lots laid out and shown on a certain map of section No. 3 of North Lake Estates, which map had been conditionally approved by the City Planning Board of that city; and (2) an adjoining tract of land which the said seller and purchaser contemplated could and should be subdivided into lots to be shown on a proposed map to be known as section No. 4 of North Lake Estates.
In its trial brief, the plaintiff concedes that both parties to the aforesaid sale and purchase-money mortgage knew that in obtaining the planning board’s approval to the proposed subdivision map of section No. 4, the said board, in acting upon any subdivision map which it found satisfactory, was obligated, under the provisions of section 33 of the Q-eneral City Law, to condition its approval of such map either upon the actual and complete installation of the improvements required by the cited section, or, in the alternative (and provided the board, in the exercise of its discretion, saw fit to accept the same) upon the furnishing of a sufficient performance bond which insured the installation of said improvements. Despite this knowledge of the board’s right and power to impose either one of the aforesaid conditions, the parties to the transaction evidently relied upon the course which the board had followed in its approval of the aforesaid subdivision map of section No. 3 (which approval had been conditioned upon the furnishing of a performance bond) and it seems likely that they assumed and hoped that the same course would be adopted by the board with respect to the approval of any proposed subdivision map of section No. 4. Accordingly, in the contract for the sale and purchase of the said premises and in the pertinent purchase- *825 money mortgage which the buyer executed and delivered to the seller at the closing of title, it was respectively agreed, in substance, with respect to the aforesaid adjoining tract, that: (1) within 30 days from said closing, the seller and purchase-money mortgagee should file with the City of White Plains a satisfactory subdivision map of section Ño. 4 of North Lake Estates; (2) the said seller and purchase-money mortgagee should then diligently apply for, and within 180 days from said closing, obtain, the planning board’s approval of said map; (3) if an approval of said map were not obtained within said period of 180 days, the buyer and purchase-money mortgagor would have the right to reconvey to the seller and purchase-money mortgagee, and the latter would accept a reconveyance of, all of the lots shown on said proposed subdivision map of section No. 4, at a price of $2,500 a lot to be allowed as a credit on and in reduction of the sum secured by said purchase-money mortgagee; (4) within the time prescribed by the appropriate board or officer of the City of White Plains and in any event by not later than 60 days from the date of the board’s approval of such map, the buyer and purchase-money mortgagor should file and furnish a performance bond for and in connection with the approval of said map; and (5) if said performance bond should not be filed within the last-mentioned period, the seller and purchase-money mortgagee should have the right to declare the entire principal secured by said purchase-money mortgage to be immediately due and payable.
It also appears that within the prescribed 30-day period, the seller and purchase-money mortgagee filed a subdivision map of section No. 4 containing 33 building lots; an application for the planning board’s approval of said map was diligently applied for; the board found the map to be satisfactory; and on November 15,1955, the board granted its final approval (of said map) conditioned not upon the furnishing of a performance bond but upon the actual and complete installation of all the improvements, other than sidewalks, called for and required by section 33 of the General City Law.
The gist of the plaintiff’s present claim is that since the parties to the transaction believed and assumed that the planning board would condition its approval of the proposed subdivision map only upon the furnishing of a performance bond and since to the disappointment of the purchaser, the board had conditioned its approval upon the actual and complete installation of the aforesaid improvements, this court should now so interpret the above-mentioned contract and purchase-money mortgage as to require the defendant mortgagee to accept a reconveyance of the *826 lots shown on the aforesaid map. To sustain this claim, it would be necessary to find from the express provisions of the contract and mortgage that the buyer and purchase-money mortgagor had the right to offer such a reconveyance and that the seller and mortgagee was required to accept the same, if and in the event that: (a) the planning board declined to issue an absolute and unconditional final approval of the said map; or (b) any approval issued by said board be conditioned upon the doing or furnishing of any matter, act or thing other than the furnishing of a sufficient performance bond.
The difficulty with the plaintiff’s position and contention is that the subject instruments do not contain any provisions authorizing the making, and requiring the acceptance, of a reconveyance in either of said last-mentioned events.
It is fundamental that agreements must be enforced as written. (Hockensmith Contr. Co. v. Carnegie-Illinois Steel Corp., 22 N. Y. S. 2d 280, revd. 261 App. Div. 349.) While it is true that courts concern themselves with that which the parties intended, yet they may do so “ only to the extent that [the parties] evidenced what they intended by what they wrote ”. (Raleigh Associates v. Henry, 302 N. Y. 467, 473.) Nor may the courts make a new contract for the parties under the guise of interpreting the writing. (Brown v. Manufacturers Trust Co., 278 N. Y. 317, 324; Friedman v. Handelman, 300 N. Y. 188, 194; Wilson Sullivan Co. v. International Paper Makers Realty Corp., 307 N. Y. 20, 25.) Indeed, it has also been held that where, as here, the contract is written, the intent of the parties is ineffective unless expressed in writing; and if the contract as signed does not clearly express the agreement of the parties, that may be a reason why it should be reformed, but until reformed it is the duty of the court to enforce it according to its terms. (Barrand v. Quinn, 277 App. Div. 938, affd. 302 N. Y. 744.)
In the light of the above views, this court is of the opinion that it is not necessary to consider the affirmative defenses presented in the defendant’s answer, as amended at the time of trial.
Accordingly, the complaint is dismissed, but without costs.
The foregoing constitutes the decision of this court in accordance with the provisions of section 440 of the Civil Practice Act.
All exhibits may be obtained from the Clerk of Special Term, Part II.
Settle judgment on notice.